## Appeal of SIX HUNDRED AND FIFTY WEST END AVE. CO.

Docket No. 3140.  Submitted July 1, 1925.  Decided October 21, 1925.

1. Where real estate is sold subject to a first mortgage and the vendor receives 20 per cent of the purchase price in cash and 20 per cent in the form of a second mortgage, payable in quarterly installments over a period of six years, the transaction is not an installment sale.

2. In such case the net income of the vendor is properly reflected by returning the sale in the year in which it was made and by computing the gain in accordance with the actual value of the property received in exchange; and in the absence of evidence to the contrary the face value of the second mortgage will be accepted as the fair market value thereof in the year of the sale.

*Charles Jacobson*, *C. P. A.*, for the taxpayer.
*George G. Witter*, *Esq.*, for the Commissioner.

Before James, Littleton, Smith, and Trussell.

### FINDINGS OF FACT.

The taxpayer is a New York corporation, with its principal office in New York City.

During the year 1917 the taxpayer constructed, at a cost of $546,-382.07, an apartment house at the southeast corner of West End Avenue and Ninety-second Street, Borough of Manhattan, City of New York. In connection with the financing of the said construction the taxpayer borrowed from the Metropolitan Life Insurance Co. of New York the sum of $400,000, giving a first mortgage to secure payment thereof.

Thereafter and during the year 1919 the taxpayer sold the property in question to the Owl Construction Co., Inc., at a total sales price of $635,000. Ten thousand dollars of the purchase price was paid when the contract of purchase was entered into; $105,000 on the delivery of the deed for the property, which occurred in 1919; and the remainder, $520,000, was made up by the acceptance of a deed subject to the $400,000 first mortgage above mentioned and by the receipt of a purchase money mortgage in the amount of $120,000, bearing interest at 6 per cent and payable in installments as follows:

Quarterly, in the amount of $3,125 for the first year, and quarterly for five additional years, in amounts of $5,375, the entire mortgage being due and payable at the end of six years.

The taxpayer in its return claimed that none of the $120,000 should be included as part of the profits in connection with the said sale. The Commissioner, in the audit of the taxpayer's return, treated the sale as one made under the installment plan. The record does not show the amount of profit assigned by the Commissioner to the year 1919. In connection with the computation of the gain upon the sale of the property, the Commissioner computed depreciation at the amount of $10,045.46 from the date of the construction of the property to and including the date of sale. The total gross profit so computed on the sale was $98,662.76.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

#### OPINION.

JAMES: The Commissioner computed the profit and the deficiency in tax upon the transaction above set forth upon the basis of a sale under the installment plan. In this we believe he was in error.

It is the opinion of the Board that the net income of this taxpayer is properly reflected by returning the sale here in question in the year 1919 and computing the profit in accordance with the value

of the property received in exchange. The property was sold for $115,000 cash, subject to a first mortgage of $400,000. To that extent there was cash of its equivalent beyond question. To balance the transaction the taxpayer received a purchase money mortgage of $120,000. Upon the value of that mortgage the taxpayer submitted the testimony of its president and of dealers in this class of securities who were familiar with their values in 1919. In some instances these parties placed a value upon the security here in question of $70,000 to $75,000. Others merely stated that they had found purchasers at $80,000 and that the taxpayer refused to sell at that price. Upon cross examination the president of the taxpayer testified that this entire second mortgage was paid off in accordance with its terms, or in anticipation of the payments provided therein. The mortgage bore 6 per cent interest. Upon this evidence we are asked to find that the mortgage had a value less than its face when it was received in 1919, or to find that it had no fair market value at that time. The record is silent as to any asking price placed on the mortgage by the taxpayer from which a maximum value might be deduced. Under these circumstances we are unable to find that the mortgage had a fair market value in 1919 of less than its face. The entire profit from this transaction, including the mortgage at the value of $120,000, should therefore be included in taxable income for the year 1919 and the deficiency appealed from computed accordingly.

The taxpayer alleges that depreciation was overcomputed in a year preceding the sale but offers no evidence in support of that contention. The gross profit must, therefore, be computed in the same manner as it was computed by the Commissioner and the net profit taxable in 1919 recomputed as above set forth.